## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILITY IP HOLDINGS, INC., | § § | |
| *Plaintiff,* | § § | |
| | § | Case No. ___2:26-cv-157___ |
| v. | § § | |
| SAMSUNG ELECTRONICS CO, LTD. | § | |
| AND SAMSUNG ELECTRONICS | § | Jury Trial Demanded |
| AMERICA, INC., | § § | |
| *Defendants.* | § § | |
| | § | |

---

## PLAINTIFF'S COMPLAINT

---

Plaintiff **Mobility IP Holdings, Inc.** ("Mobility IP") files this suit against Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") for infringement of United States Patent Nos. 8,151,345; 8,548,924; 8,766,772; 8,933,807; 10,235,513; 10,706,412; and 10,762,187 and alleges, with personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

### THE PARTIES

1.      Plaintiff Mobility IP is a Texas corporation that holds all right, title, and interest in United States Patent Nos. 8,151,345 ("'345 Patent"); 8,548,924 ("'924 Patent"); 8,766,772 ("'772 Patent"); 8,933,807 ("'807 Patent"); 10,235,513 ("'513 Patent"); 10,706,412 ("'412 Patent"); and 10,762,187 ("'187 Patent") (collectively, "Asserted Patents"). *See* Exhibits 1–7. Mobility IP has a principal place of business at 1917 Palomar Oaks Way, Suite 110, Carlsbad, California 92008.

2.      Defendant SEC is a Korea corporation with its principal place of business at 129 Samsung-Ro Yeongtong-gu, Suwon-Si, Gyeonggi-do, 16677 Republic of Korea. SEC may be

served pursuant to Fed. R. Civ. P. 4(f)(1). In addition, or in the alternative, SEC may be served through its registered agent Ms. Jenni Chun at 19 Chapin Rd., Bldg. D, Pine Brook, NJ 07058. *See, e.g.*, Exhibit 8.

3.      Defendant SEA is a New York corporation with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. SEA has been registered to do business in the state of Texas since June 10, 1996 and may be served through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.      SEA is a wholly owned subsidiary of SEC (SEC and SEA collectively "Samsung" or "Defendants"). Samsung maintains regular and established places of business in this District, including a "flagship campus" at 6625 Excellence Way, Plano, Texas 75023.[1]

### JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action brought by Mobility IP against Samsung arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

6.      This Court has personal jurisdiction over Samsung at least because Samsung conducts business in this District and throughout the state of Texas.

7.      This Court also has personal jurisdiction over Samsung because Samsung has committed acts of patent infringement in this District and throughout Texas, including selling, and offering for sale, products and services that infringe Mobility IP's Asserted Patents.

8.      This Court also has personal jurisdiction over Samsung because Samsung has placed infringing products and services into the stream of commerce, with the expectation they

---

[1] Samsung, *Samsung Electronics America to Open Flagship North Texas Campus*, available at https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus/ (last visited Feb. 17, 2026).

will be purchased and used by customers in Texas and in this District, such that customers in Texas and in this District have purchased and used, and continue to purchase and use, Samsung's infringing products and services, which has allowed Samsung to derive substantial benefits from infringing acts in Texas and in this District.

9.    Venue is proper in this District against Samsung pursuant to 28 U.S.C. §§ 1391 and 1400(b).

10.    Venue is proper in this District against Defendant SEC under 28 U.S.C. § 1391(c)(3) because SEC is a foreign corporation that is not a resident of the United States.

11.    Venue is proper in this District against Defendant SEA under 28 U.S.C. §§ 1391 and 1400(b) because SEA is subject to the personal jurisdiction of this Court as set forth above, has committed patent infringement in this District, and maintains regular and established places of business in this District, including a "flagship campus" at 6625 Excellence Way, Plano, Texas 75023.

12.    Samsung has previously been party to numerous patent cases in this District and has repeatedly availed itself of the power and benefits of this Court and forum by raising counterclaims seeking a declaratory judgment of noninfringement and invalidity.[2]

13.    Defendants SEC and SEA are properly joined under 35 U.S.C. § 299(a)(1) because Defendants have committed the accused acts of patent infringement jointly, severally, and in the alternative with respect to or arising out of the same transaction, occurrence, or series of

---

[2] *See, e.g., Kim v. Samsung Elecs. Co.*, 2-23-cv-00155 (E.D. Tex. Apr. 5, 2023), *Kim v. Samsung Elecs. Co.*, 2-22-cv-00367 (E.D. Tex. Sept. 21, 2022), *Hardin v. Samsung Elecs. Co.*, 2-22-cv-00344 (E.D. Tex. Sept. 2, 2022), *Smith Interface Techs., LLC v. Samsung Elecs. Co.*, 2-22-cv-00290 (E.D. Tex. Jul. 29, 2022), *Emergent Mobile LLC v. Samsung Elecs. Co.*, 2-22-cv-00107 (E.D. Tex. Apr. 8, 2022), *Scramoge Tech. Ltd. v. Samsung Elecs. Co.*, 2-22-cv-00015 (E.D. Tex. Jan. 10, 2022), *Netlist, Inc. v. Samsung Elecs. Co.*, 2-21-cv-00463 (E.D. Tex. Dec. 20, 2021), *KT Imaging USA, LLC v. Samsung Elecs. Co.*, 4-20-cv-00339 (E.D. Tex. Apr. 20, 2020), *Acorn Semi, LLC v. Samsung Elecs. Co.*, 2-19-cv-00347 (E.D. Tex. Oct. 23, 2019), *Dareltech, LLC v. Samsung Elecs. Co.*, 4-18-cv-00702 (E.D. Tex. Oct. 4, 2018), and *MyMail, Ltd. v. Samsung Elecs. Co.*, 2-18-cv-00017 (E.D. Tex. Jan. 19, 2018).

transactions or occurrences relating to the making, using, importing, selling, and/or offering for sale the same accused Samsung products and services. In addition, joinder is proper under 35 U.S.C. § 299(a)(2) because questions of fact common to both Defendants will arise in this action.

## FACTUAL BACKGROUND

### *Mobile-Device Payments*

14.    Use of mobile devices such as smartphones to pay for goods and services has become an enormous business that continues to grow, with some analysts estimating a total contactless transaction volume of over a trillion dollars annually in the United States.

15.    Samsung is one of the largest smartphone manufacturers in the United States and in the world. Samsung's mobile devices enable users to pay at a point of sale ("POS") terminal by confirming their identity via the mobile device, then placing the mobile device close to a near-field communication ("NFC") receiver located at the POS terminal.[3] Using information stored in the mobile device via the Samsung Wallet or Samsung Pay app,[4] the POS terminal can process the payment without requiring the user to physically present a payment card.

16.    Because of the convenience and security of payments using mobile devices, the use of mobile devices has grown substantially since the introduction of payments via mobile device. Mobile device payments are convenient because users typically carry their mobile device with them. Mobile device payments are more secure than card payments because a transaction cannot occur unless the user authenticates themselves on the mobile device, which is a form of protection that does not exist with in-person card transactions.

---

[3] Samsung, *How to use Samsung Wallet and Pay*, https://youtu.be/q-1dNsPJlnw?t=106
[4] Samsung Pay was formerly a separate app but later was integrated into Samsung Wallet. https://www.samsung.com/us/support/owners/app/samsung-wallet (last visited Feb. 17, 2026).

*Mobility IP and Its Patented Inventions*

17.    Well over a decade before Samsung first introduced its mobile payment technology, the inventors of the Asserted Patents began developing the technology at issue in this case.

18.    In the early 2000s, Neology, Inc. began applying for patents that embodied the innovations that resulted from innovations in this space. The United States Patent and Trademark Office ("PTO") has since issued numerous patents to Neology, including the '772 Patent, the '807 Patent, the '513 Patent, the '412 Patent, and the '187 Patent. Neology eventually assigned these patents to Mobility IP.

19.    In addition, Neology also acquired patents directed to technology involving the use of secure elements to store transaction information that can be later transmitted via near-field communication ("NFC") and other means. These inventions are reflected in the '345 Patent and the '924 Patent. Neology eventually assigned these patents to Mobility IP.

20.    Mobility IP is the sole and exclusive owner of all right, title and interest to and in, or is the exclusive licensee with the right to sue for, the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights to the Asserted Patents, including the filing of this patent infringement lawsuit. Mobility IP also has the right to recover all damages for past, present, and future infringement of the Asserted Patents and to seek injunctive relief as appropriate under the law.

*Samsung's Use of the Patented Technology*

21.    Samsung markets itself as a leading provider of mobile devices in the United States such as smartphones, tablets, and watches. The ecosystem of Samsung products spans billions of mobile devices. The mobile device products Samsung sells in the United States include at least the following: Samsung Galaxy A Series; Samsung Galaxy Note Series (until 2021); Samsung Galaxy

S Series; Samsung Galaxy Xcover Series; Samsung Galaxy Z Fold Series; the Samsung Galaxy Z Flip Series; Samsung Galaxy Watch Series; and Samsung Galaxy Tab series (referred to collectively as the "Accused Instrumentalities").[5] Each of the mobile device lines includes one or more different models of mobile devices. Throughout this complaint, if an exemplary mobile device is discussed, such as the Samsung Galaxy S23 Ultra,[6] it should be understood that the accusations against the exemplary mobile device are also applicable to all other Samsung mobile devices sold in the United States in the past six years.

22.    Near Field Communication ("NFC") can be used to facilitate mobile payments when an NFC-equipped device (such as a smartphone or an electronic wearable like a watch) is placed near a contactless merchant terminal allowing the devices to exchange payment data.

23.    Contactless merchant terminal adoption in the U.S. has been expedited by card issuer security requirements. Card issuers in the United States set an October 2015 deadline for merchants to upgrade payment terminals capable of accepting credit cards with embedded chips for security, and many of these upgraded terminals have NFC capability built in. In December 2015, approximately 2.36 million contactless terminals were in service in the United States. As a result of the COVID-19 pandemic, there has been a sharp rise in adoption of contactless payment in the United States and all over the globe. By 2024, public reporting estimates that contactless payments accounted for approximately 25% of all card transactions in the United States.[7]

24.    Each of the Accused Instrumentalities include a processor, a secure element, biometric security, a display, a cellular radio, and an NFC radio.

---

[5] https://www.samsung.com/us/business/mobile/phones/; https://tsar3000.com/list-of-all-samsung-galaxy-models-by-series-and-release-date/ (last visited Feb. 17, 2026).
[6] https://www.samsung.com/us/smartphones/galaxy-s23-ultra-lite-no-3-party/ (last visited Feb. 17, 2026).
[7] Clearly Payments, *The Contactless Payments Market Overview in USA for 2024*, https://www.clearlypayments.com/blog/the-contactless-payments-market-overview-in-usa-for-2024/ (last visited Feb. 17, 2026).

25. On September 28, 2015, Samsung launched its Samsung Pay mobile payment service that enabled its users to make a payment—"Users can simply swipe up, scan their fingerprint and pay."[8] The smartphone first authenticates the user using biometrics such as a fingerprint reader or facial recognition. After authentication, the user places smartphone near a POS terminal. The smartphone then transmits transaction information (such as card information) to the POS terminal via NFC to complete the transaction.

26. By making, using, offering to sell, and/or selling the Accused Instrumentalities, Samsung has infringed and is infringing the asserted patents as described in further detail below.

### Causes of Action

### Count I: Infringement of U.S. Patent No. 8,151,345 ("'345 Patent")

27. All preceding factual allegations above are incorporated as if fully set forth herein.

28. The USPTO duly and legally issued U.S. Patent No. 8,151,345 ("'345 Patent") to C. Douglas Yeager as the named inventor. All right, title, and interest in the '345 Patent have been assigned to Mobility IP.

29. The '345 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

30. Samsung has directly infringed and continues to directly infringe the '345 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the Accused Instrumentalities to practice the claimed invention in the '345 Patent. For example, claim 23 of the '345 Patent[9] recites:

---

[8] Samsung, *Samsung Mobile Payment Service – Samsung Pay, Available Starting Today in the U.S.*, (Sep. 28, 2015), https://news.samsung.com/global/samsung-mobile-payment-service-samsung-pay-available-starting-today-in-the-u-s; *see also* Samsung UK, *How to set-up Samsung Pay on your Galaxy phone,* https://youtu.be/Aw2zbFUIGls?t=28.

[9] Claim 23 is referenced herein for representative purposes. Plaintiff reserves the right to identify additional asserted claims and reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

A cellular network adapter for a cellular network device configured with a cellular network application interface comprising;

> a secure element comprising a data file;

> a secure element reader in the cellular network adapter configured to interrogate the secure element by executing file system functions according to ISO 7816-4 and to generate file information from the secure element data file;

> a near field communications controller bridge chip to convert the file information to an RF data signal for an external reader; and

> a communications controller configured to receive the file information from the secure element reader and to convert at least a portion of the file information into transaction authorization information and to transmit the transaction authorization information from the cellular network device over a wireless network through the cellular network application interface, wherein the wireless network comprises a cellular network and the secure element reader in the cellular network adapter is configured to await a startup instruction comprising an unpredictable number originating over the cellular wireless network prior to interrogating the secure element.

31.     The Accused Instrumentalities meet the recited elements of Claim 23. For example, the Accused Instrumentalities include a secure element. The teardown of an exemplary Samsung Galaxy S23 Ultra is presented below.[10] The motherboard includes a secure element, a near field communications controller bridge chip, and one or more processors that are configured to receive file information from the secure element and to convert the information into transaction authorization information:

---

[10] *TechInsights Teardown: Samsung Galaxy S23 Ultra*, (Sep. 22, 2023)
https://electronics360.globalspec.com/article/20178/techinsights-teardown-samsung-galaxy-s23-ultra



The main board of the Samsung Galaxy S23 Ultra includes the main components that help the phone operate with the cellular connection, Wi-Fi, Bluetooth and more. Source: TechInsights

**Main board**

The main board includes the heart of the phone with the main applications processor from Qualcomm with an octa-core Snapdragon 8 generation and 8 GB mobile LPDDR5X SDRAM multi-chip memory from Samsung. Other electronic components include:

- 256 GB 3D TLC V-NAND flash and camera power management from Samsung
- NFC and secure element chip, SIM card interface and battery charger from NXP Semiconductors
- Qualcomm 5G RF transceiver and power management IC
- Power management IC from Analog Devices
- Class-D audio amplifier from Cirrus Logic
- Overvoltage protection from ETEK
- OVP load switch from Kinetic Technologies.
- 32-bit ARM Cotex-M0 microcontroller from ST Microelectronics

32.    The secure element is used to store electronic payment information.[11] The Accused Instrumentalities follow Europay, Mastercard, and Visa's (EMV's) standards for processing contactless payments.[12]

---

[11] Samsung Developer, *Samsung eSE SDK*, https://developer.samsung.com/ese/overview.html (last visited Feb. 17, 2026) (describing the "embedded Secure Element (eSE)" of Samsung devices and how they store "payments."); Samsung, *How secure is Samsung Pay*, https://www.samsung.com/uk/support/apps-services/how-secure-is-samsung-pay/ (last visited Feb. 17, 2026) (describing Samsung Pay's use of tokenization to store credit card (transaction) information).

[12] US Payments Forum, *EMV Payment Tokenization Primer and Lessons Learned*, (Jun. 2019), https://www.uspaymentsforum.org/wp-content/uploads/2019/06/EMV-Payment-Tokenization-Primer-Lessons-Learned-FINAL-June-2019.pdf at 24–25; *see also* EMVCo, *EMV Payment Tokenisation: A Guide to Use Cases* (Jan. 16, 2023) at 42–43, found at https://www.emvco.com/emv-technologies/payment-tokenisation/.

### 5.1.2 Transaction Processing (POS Contactless, Device-Centric Wallet)

Figure 6 illustrates the processing for in-store EMV contactless transactions using an NFC-enabled mobile phone with a device-centric digital wallet at a POS.



<sup>a</sup> In some implementations, the last four digits, instead of the PAN, are passed back in the authorization response
<sup>b</sup> Last 4 digits of the PAN may not always be returned to the merchant.

**Figure 6.  Processing a Contactless EMV Transaction Using an NFC-Enabled Device-Centric Digital Wallet**

1. The cardholder taps a contactless-enabled mobile device at a merchant contactless POS device to pay for goods and services.  A transaction authorization is initiated, and a corresponding message is sent to the merchant acquirer/processor containing the payment token from the cardholder's mobile device, along with a unique cryptogram.

2. The merchant acquirer/processor receives the transaction request, uses the token (looks like a PAN) to perform a token BIN lookup, and determines the networks to which the transaction can be routed.  The merchant acquirer/processor routes the transaction to the appropriate payment network (based on the preferred routing choice, least cost, or some other criterion agreed to with the merchant).

3. The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.

4. The TSP verifies the cryptogram and returns the clear PAN[6] to the payment network.

5. The payment network forwards the transaction with the clear PAN to the appropriate issuer processor.

6. The issuer processor forwards the authorization request, with the clear PAN, to the issuer.

7. The issuer completes final authorization and sends an authorization response to the issuer processor.

8. The issuer processor sends the authorization response to the payment network.

9. The payment network sends the authorization response to the merchant acquirer/processor, ensuring that the token, not the clear PAN, is included.

10. The merchant acquirer/processor responds to the contactless terminal to complete the transaction.  Meanwhile, the issuer processor sends a transaction completion notification, with the token, to the TSP, indicating the outcome of the transaction.

11. The TSP pushes a notification to the mobile device on which the token was initially provisioned during the enrollment process.  Whether this step occurs depends on issuer participation.

33.     The cardholder's primary account number (PAN) is sent to a token provider that verifies the card via the card issuer. Once verified, a token known as the Device Account Number is activated and stored in the phone. The Device Account Number is a surrogate that represents the PAN for purposes of payment processing.[13] Thus, the secure element includes a data file.

34.     The above-described functionality is initiated by the processor that accessed the transaction information (e.g., the Device Account Number) from the secure element. The information is then combined into a communications data package (the unique cryptogram) based on the transaction information.

35.     During a Samsung Pay transaction, the mobile device creates a dynamic cryptogram specific to the transaction. The cryptogram is created using the token (based on the credit card), token key, transaction data, etc. according to the EMV contactless specification.[14] The dynamic cryptogram, token, and other data is transmitted via NFC from the mobile device to the terminal. Each of the Accused Instrumentalities allows the emulation of ISO 7816-4 cards.[15]

36.     The Accused Instrumentalities include a communications controller configured to receive the file information from the secure element reader and to convert at least a portion of the file information into transaction authorization information and to transmit the transaction authorization information from the cellular network device over a wireless network through the cellular network application interface, wherein the wireless network comprises a cellular network and the secure element reader in the cellular network adapter is configured to await a startup instruction comprising an unpredictable number originating over the cellular wireless network prior to interrogating the secure element.

---

[13] *See* EMVCo, *supra*, at 41–42.
[14] US Payments Forum, *supra* at 41.
[15] Android Developers, *Host-based card emulation overview*, https://developer.android.com/develop/connectivity/nfc/hce (last visited Feb. 17, 2026).

37.     Samsung committed the infringing activities without a license from Mobility IP. Samsung's acts of infringement have damaged Mobility IP, as owner of the '345 Patent. Mobility IP is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial. The infringement of the '345 Patent by Samsung has damaged and will continue to damage Plaintiff.

38.     Samsung's infringement of Mobility IP's '345 Patent is willful as of the date of the service of Mobility IP's Original Complaint.

**Count II: Infringement of U.S. Patent No. 8,548,924 ("'924 Patent")**

39.     All preceding factual allegations above are incorporated as if fully set forth herein.

40.     The USPTO duly and legally issued U.S. Patent No. 8,548,924 ("'924 Patent") to C. Douglas Yeager as the named inventor. All right, title, and interest in the '924 Patent have been assigned to Mobility IP.

41.     The '924 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

42.     Samsung has directly infringed and continues to directly infringe the '924 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the Accused Instrumentalities to practice the claimed invention in the '924 Patent. For example, claim 60 of the '924 Patent[16] recites:

> A token for transmitting a communications data package to a host device, the token comprising:
>
>> a mounting structure;
>>
>> a secure element affixed to the mounting structure, the secure element including a data file containing transaction information;

---

[16] Claim 60 is referenced herein for representative purposes. Plaintiff reserves the right to identify additional asserted claims and reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

a secure element interrogator affixed to the mounting structure and configured to interrogate the secure element to acquire the transaction information from the data file by exchanging at least one transaction data communication between the secure element and the secure element interrogator and to generate the communications data package based on the transaction information; and

a communications controller affixed to the mounting structure and configured to receive the communications data package from the secure element interrogator and to transmit the communications data package to the host device.

43.    The Accused Instrumentalities meet the recited elements of claim 60.

44.    For example, the Accused Instrumentalities include a mounting structure and a secure element affixed to the mounting structure. The teardown of an exemplary Samsung Galaxy S23 Ultra is presented below.[17] The motherboard includes a mounting structure, a secure element, a secure element interrogator, and a communications controller that is configured to interrogate the secure element to acquire transaction information and generate a communications package and further configured to transmit a communications data package to a host device.

---

[17] TechInsights Teardown, *supra*.

The main board of the Samsung Galaxy S23 Ultra includes the main components that help the phone operate with the cellular connection, Wi-Fi, Bluetooth and more. Source: TechInsights

**Main board**

The main board includes the heart of the phone with the main applications processor from Qualcomm with an octa-core Snapdragon 8 generation and 8 GB mobile LPDDR5X SDRAM multi-chip memory from Samsung. Other electronic components include:

- 256 GB 3D TLC V-NAND flash and camera power management from Samsung
- NFC and secure element chip, SIM card interface and battery charger from NXP Semiconductors
- Qualcomm 5G RF transceiver and power management IC
- Power management IC from Analog Devices
- Class-D audio amplifier from Cirrus Logic
- Overvoltage protection from ETEK
- OVP load switch from Kinetic Technologies
- 32-bit ARM Cotex-M0 microcontroller from ST Microelectronics

45. The secure element is used to store electronic payment information.[18] The Accused Instrumentalities follow EMV's standards for processing contactless payments.[19]

---

[18] Samsung Developer, *supra* (describing the "embedded Secure Element (eSE)" of Samsung devices and how they store "payments."); *How secure is Samsung Pay*, *supra* (describing Samsung Pay's use of tokenization to store credit card (transaction) information).

[19] https://www.uspaymentsforum.org/wp-content/uploads/2019/06/EMV-Payment-Tokenization-Primer-Lessons-Learned-FINAL-June-2019.pdf at 24–25; *see also* EMV Payment Tokenisation, *A Guide to Use Cases* (Jan. 2023) at 42–43, found at https://www.emvco.com/emv-technologies/payment-tokenisation/.

### 5.1.2   Transaction Processing (POS Contactless, Device-Centric Wallet)

Figure 6 illustrates the processing for in-store EMV contactless transactions using an NFC-enabled mobile phone with a device-centric digital wallet at a POS.



**Figure 6.  Processing a Contactless EMV Transaction Using an NFC-Enabled Device-Centric Digital Wallet**

1.  The cardholder taps a contactless-enabled mobile device at a merchant contactless POS device to pay for goods and services.  A transaction authorization is initiated, and a corresponding message is sent to the merchant acquirer/processor containing the payment token from the cardholder's mobile device, along with a unique cryptogram.

2.  The merchant acquirer/processor receives the transaction request, uses the token (looks like a PAN) to perform a token BIN lookup, and determines the networks to which the transaction can be routed.  The merchant acquirer/processor routes the transaction to the appropriate payment network (based on the preferred routing choice, least cost, or some other criterion agreed to with the merchant).

3.  The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.

4.  The TSP verifies the cryptogram and returns the clear PAN[6] to the payment network.

5.  The payment network forwards the transaction with the clear PAN to the appropriate issuer processor.

6.  The issuer processor forwards the authorization request, with the clear PAN, to the issuer.

7.  The issuer completes final authorization and sends an authorization response to the issuer processor.

8.  The issuer processor sends the authorization response to the payment network.

9.  The payment network sends the authorization response to the merchant acquirer/processor, ensuring that the token, not the clear PAN, is included.

10.  The merchant acquirer/processor responds to the contactless terminal to complete the transaction.  Meanwhile, the issuer processor sends a transaction completion notification, with the token, to the TSP, indicating the outcome of the transaction.

11.  The TSP pushes a notification to the mobile device on which the token was initially provisioned during the enrollment process.  Whether this step occurs depends on issuer participation.

46.     The cardholder's primary account number (PAN) is sent to a token provider that verifies the card via the card issuer. Once verified, a token known as the Device Account Number is activated and stored in the phone. The Device Account Number is a surrogate that represents the PAN for purposes of payment processing.[20] Thus, the secure element includes a data file containing transaction information.

47.     The above-described functionality is initiated by the processor that accessed the transaction information (e.g., the Device Account Number) from the secure element. The information is then combined into a communications data package (the unique cryptogram) based on the transaction information. During a Samsung Pay transaction, the mobile device creates a dynamic cryptogram specific to the transaction. The cryptogram is created using the token (based on the credit card), token key, transaction amount, etc. according to the EMV contactless specification.[21] The dynamic cryptogram, token, and other data is transmitted via NFC from the mobile device to the terminal. Thus, the communications data package is based on the transaction information.

48.     The communications data package is created and transmitted to the host device. The processor is used to perform such functionality.

49.     Samsung committed the infringing activities without license from Mobility IP. Samsung's acts of infringement have damaged Mobility IP, as owner of the '924 Patent. Mobility IP is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial. The infringement of the '924 Patent by Samsung has damaged and will continue to damage Plaintiff.

---

[20] *See* EMVCo., *supra* at 41–42.
[21] US Payments Forum, *supra* at 41.

50.    Samsung's infringement of Mobility IP's '924 Patent is willful as of the date of the service of Mobility IP's Original Complaint.

**Count III: Infringement of U.S. Patent No. 8,766,772**

51.    All preceding factual allegations are incorporated as if fully set forth herein.

52.    The USPTO duly and legally issued U.S. Patent No. 8,766,772 ("'772 Patent") to Mr. Franciso Martinez de Velasco Cortina and Mr. Manfred Rietzler as named inventors. All right, title, and interest in the '772 Patent have been assigned to Mobility IP.

53.    The '772 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

54.    Samsung has directly infringed the '772 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the Accused Instrumentalities to practice the claimed invention in the '772 Patent. For example, Claim 9 of the '772 Patent[22] recites:

A mobile device, comprising:

a biometric input device configured to receive biometric data; and

a radio frequency antenna and a chip, the chip comprising:

a memory, the memory configured to store transaction information and biometric information for identifying an individual associated with the transaction, and

a processor coupled with the memory and the biometric input, the processor configured to:

receive a signal via the radio frequency antenna, the signal comprising a request to access the memory and retrieve the transaction information,

receive biometric information from the biometric input device,

compare the received biometric information with the biometric information stored in the memory, and

---

[22] Claim 9 is referenced herein for representative purposes. Plaintiff reserves the right to identify additional asserted claims and reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

provide the transaction information in response to the access request when the biometric information matches.

The Accused Instrumentalities meet the recited elements of Claim 9.

55.     For instance, Samsung's mobile devices include a biometric input device such as a fingerprint sensor:[23]



56.     The Accused Instrumentalities include a radio frequency antenna. For example, the Accused Instrumentalities include NFC technology that includes an antenna configured to communicate via NFC, which utilizes radio frequency.[24]



---

[23] Samsung, *Use the fingerprint sensor on your Galaxy phone of tablet*, https://www.samsung.com/us/support/answer/ANS10001613/ (last visited Feb. 17, 2026).
[24] iFixit, *Galaxy S23 Teardown*, https://www.ifixit.com/Teardown/Galaxy+S23+Teardown/158006 (last visited Feb. 17, 2026).

57.    The Accused Instrumentalities include a chip. For illustrative purposes, the main board of a Samsung Galaxy S23 Ultra is illustrated below.[25] The main board includes multiple chips.



The main board of the Samsung Galaxy S23 Ultra includes the main components that help the phone operate with the cellular connection, Wi-Fi, Bluetooth and more. Source: TechInsights

**Main board**
The main board includes the heart of the phone with the main applications processor from Qualcomm with an octa-core Snapdragon 8 generation and 8 GB mobile LPDDR5X SDRAM multi-chip memory from Samsung. Other electronic components include:

- 256 GB 3D TLC V-NAND flash and camera power management from Samsung
- NFC and secure element chip, SIM card interface and battery charger from NXP Semiconductors
- Qualcomm 5G RF transceiver and power management IC
- Power management IC from Analog Devices
- Class-D audio amplifier from Cirrus Logic
- Overvoltage protection from ETEK
- OVP load switch from Kinetic Technologies.
- 32-bit ARM Cotex-M0 microcontroller from ST Microelectronics

58.    The Accused Instrumentalities include a memory. The memory is configured to store transaction information and biometric information for identifying an individual associated

---

[25] TechInsights Teardown, *supra*.

with the transaction. For example, the Accused Instrumentalities include random access memory (RAM) which qualifies as memory.[26]

| MEMORY | Card slot | No |
|--------|-----------|-----|
| | Internal | 256GB 8GB RAM, 256GB 12GB RAM, 512GB 12GB RAM, 1TB 12GB RAM UFS 4.0 |

59.    The memory is used to store fingerprint information and transaction information. The Accused Instrumentalities store sensitive data such as biometric authentication information and transaction information in a variety of different ways. For example, Samsung's Knox Vault can be used to store biometric authentication information.[27] Fingerprint biometrics may be stored in a Trusted Execution Environment (TEE).[28] Such information is "encrypted and stored in a separate part of the smartphone, completely inaccessible to the regular operating system."[29] A secure element may also be used to store card information.[30]

60.    The Accused Instrumentalities include a processor coupled with the memory and the biometric input. For example, the Samsung Galaxy S23 Ultra has a Qualcomm Snapdragon 8 Gen 2 CPU:[31]

| PLATFORM | OS | Android 13, up to 4 major Android upgrades, One UI 6.1.1 |
|----------|----|-----|
| | Chipset | Qualcomm SM8550-AC Snapdragon 8 Gen 2 (4 nm) |
| | CPU | Octa-core (1x3.36 GHz Cortex-X3 & 2x2.8 GHz Cortex-A715 & 2x2.8 GHz Cortex-A710 & 3x2.0 GHz Cortex-A510) |
| | GPU | Adreno 740 |

---

[26] GSMArena, *Samsung Galaxy S23 Ultra*, https://www.gsmarena.com/samsung_galaxy_s23_ultra-12024.php (last visited Feb. 17, 2026).
[27] Samsung Knox Documentation, *Knox Vault*, https://docs.samsungknox.com/admin/fundamentals/whitepaper/samsung-knox-mobile-security/system-security/knox-vault/ (last visited Feb. 17, 2026)
[28] Samsung Knox, *Using biometrics for authentication in Android*, (Sep. 18, 2020) https://www.samsungknox.com/en/blog/using-biometrics-for-authentication-in-android
[29] *Id*.
[30] *Samsung eSE SDK*, *supra* (describing the "embedded Secure Element (eSE)" of Samsung devices and how they store "payments."); *How secure is Samsung Pay*, *supra* (describing Samsung Pay's use of tokenization to store credit card (transaction) information).
[31] GSMArena, *supra*.

61.    In the Accused Instrumentalities, the processor is configured to receive a signal via the radio frequency antenna, the signal comprising a request to access the memory and retrieve the transaction information. For example, the Accused Instrumentalities follow EMV's standards for processing contactless payments.[32]

### 5.1.2  Transaction Processing (POS Contactless, Device-Centric Wallet)

Figure 6 illustrates the processing for in-store EMV contactless transactions using an NFC-enabled mobile phone with a device-centric digital wallet at a POS.



ᵃ In some implementations, the last four digits, instead of the PAN, are passed back in the authorization response
ᵇ Last 4 digits of the PAN may not always be returned to the merchant.

**Figure 6.  Processing a Contactless EMV Transaction Using an NFC-Enabled Device-Centric Digital Wallet**

---

[32] US Payments Forum, *supra* at 24–25; *see also* EMVCo., *supra* at 42–43.

1. The cardholder taps a contactless-enabled mobile device at a merchant contactless POS device to pay for goods and services.  A transaction authorization is initiated, and a corresponding message is sent to the merchant acquirer/processor containing the payment token from the cardholder's mobile device, along with a unique cryptogram.

2. The merchant acquirer/processor receives the transaction request, uses the token (looks like a PAN) to perform a token BIN lookup, and determines the networks to which the transaction can be routed.  The merchant acquirer/processor routes the transaction to the appropriate payment network (based on the preferred routing choice, least cost, or some other criterion agreed to with the merchant).

3. The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.

4. The TSP verifies the cryptogram and returns the clear PAN[6] to the payment network.

5. The payment network forwards the transaction with the clear PAN to the appropriate issuer processor.

6. The issuer processor forwards the authorization request, with the clear PAN, to the issuer.

7. The issuer completes final authorization and sends an authorization response to the issuer processor.

8. The issuer processor sends the authorization response to the payment network.

9. The payment network sends the authorization response to the merchant acquirer/processor, ensuring that the token, not the clear PAN, is included.

10. The merchant acquirer/processor responds to the contactless terminal to complete the transaction.  Meanwhile, the issuer processor sends a transaction completion notification, with the token, to the TSP, indicating the outcome of the transaction.

11. The TSP pushes a notification to the mobile device on which the token was initially provisioned during the enrollment process.  Whether this step occurs depends on issuer participation.

62.     During a transaction, as exemplarily illustrated above, the user places the cellular phone in proximity to the NFC reader in the POS terminal. As part of the process, the POS terminal sends a signal to the user's cellular phone—"One device (usually the NFC reader) generates an electromagnetic field to establish a connection."[33]

63.     In the Accused Instrumentalities, the processor is configured to receive biometric information from the biometric input device. The user authenticates himself/herself using biometric information, such as through the use of a fingerprint sensor.[34]

---

[33] Katie Nelson, *What is NFC and How Does it Work?*, Lightspeed (Jun. 5, 2025)
https://www.lightspeedhq.com/blog/near-field-communication-payments-explained/.
[34] Samsung, *Samsung Wallet FAQ*, https://www.samsung.com/us/apps/samsung-wallet/faq/ (last visited Feb. 17, 2026).



64.    In the Accused Instrumentalities, the processor is configured to provide the transaction information in response to the access request when the biometric information matches. For example, after the Accused Instrumentality authenticates the user, the user places the Accused Instrumentality "up to the contactless reader or payment terminal" to provide the transaction information. After the user is authenticated, the process follows the EMV standard for processing contactless payments, illustrated below. This includes providing the transaction information in response to the transaction request when the biometric information matches.[35]

---

[35] US Payments Forum, *supra* at 24–25.

1. The cardholder taps a contactless-enabled mobile device at a merchant contactless POS device to pay for goods and services.  A transaction authorization is initiated, and a corresponding message is sent to the merchant acquirer/processor containing the payment token from the cardholder's mobile device, along with a unique cryptogram.

2. The merchant acquirer/processor receives the transaction request, uses the token (looks like a PAN) to perform a token BIN lookup, and determines the networks to which the transaction can be routed.  The merchant acquirer/processor routes the transaction to the appropriate payment network (based on the preferred routing choice, least cost, or some other criterion agreed to with the merchant).

3. The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.

4. The TSP verifies the cryptogram and returns the clear PAN[6] to the payment network.

5. The payment network forwards the transaction with the clear PAN to the appropriate issuer processor.

6. The issuer processor forwards the authorization request, with the clear PAN, to the issuer.

7. The issuer completes final authorization and sends an authorization response to the issuer processor.

8. The issuer processor sends the authorization response to the payment network.

9. The payment network sends the authorization response to the merchant acquirer/processor, ensuring that the token, not the clear PAN, is included.

10. The merchant acquirer/processor responds to the contactless terminal to complete the transaction.  Meanwhile, the issuer processor sends a transaction completion notification, with the token, to the TSP, indicating the outcome of the transaction.

11. The TSP pushes a notification to the mobile device on which the token was initially provisioned during the enrollment process.  Whether this step occurs depends on issuer participation.

65.     Samsung committed the infringing activities without license from Mobility IP. Samsung's acts of infringement have damaged Mobility IP, as owner of the '772 Patent. Mobility IP is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial. The infringement of the '772 Patent by Samsung has damaged Plaintiff.

66.     Samsung's infringement of Mobility IP's '772 Patent was willful. Samsung was aware of the '772 Patent since at least October 25, 2016, when Samsung filed Patent Application No. US 15/333,343.[36] In its initial Information Disclosure Statement in support of the '343 Application, Samsung cited the '772 Patent as one of only three prior art United States Patents

---

[36] Filed on October 25, 2016. Issued as U.S. Patent 10,404,695 on September 3, 2019.

disclosed by Samsung. Despite this familiarity with the '772 Patent, Samsung practiced the invention of the '772 Patent through the Accused Instrumentalities.

## Count IV: Infringement of U.S. Patent No. 8,933,807

67.     All preceding factual allegations are incorporated as if fully set forth herein.

68.     The USPTO duly and legally issued U.S. Patent No. 8,933,807 ("'807 Patent") to Mr. Franciso Martinez de Velasco Cortina and Mr. Manfred Rietzler as named inventors. All right, title, and interest in the '807 Patent have been assigned to Mobility IP.

69.     The '807 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

70.     Samsung has directly infringed the '807 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the Accused Instrumentalities to practice the claimed invention in the '807 Patent. For example, claim 1 of the '807 Patent[37] recites:

A mobile device, comprising:

Radio Frequency (RF) cellular circuitry;

short range RF circuitry;

memory configured to store biometric authentication information and transaction information, wherein the biometric authentication information has been previously associated with the transaction information;

a biometric reading device configured to read biometric information;

an authentication module configured to authenticate that the biometric information read by the biometric reading device is associated with the transaction information based at least in part on the biometric authentication information stored in memory; and

---

[37] Claim 1 is referenced herein for representative purposes. Plaintiff reserves the right to identify additional asserted claims and reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

a transaction module configured to provide the transaction information via the short range RF circuitry for use in a transaction when the biometric information read by the biometric reading device is successfully authenticated as being associated with the transaction information by the authentication module.

71.     The Accused Instrumentalities meet the recited elements of the claimed mobile device of claim 1.

72.     Samsung's mobile devices include radio frequency cellular circuitry that allows access to various cellular networks. For example, the Galaxy S23 Ultra contains the following cellular radio technology:[38]



73.     The Accused Instrumentalities include short-range RF circuitry. For example, the Accused Instrumentalities include NFC technology that includes an antenna configured to communicate via NFC, which is a short-range technology that utilizes radio frequency.[39]



---

[38] GSMArena, *supra*.
[39] *Id*.

74.    The Accused Instrumentalities include a memory. The memory is configured to store transaction information and biometric information. For example, the Accused Instrumentalities include random access memory (RAM) which qualifies as memory.[40]

| MEMORY | Card slot | No |
|---|---|---|
| | Internal | 256GB 8GB RAM, 256GB 12GB RAM, 512GB 12GB RAM, 1TB 12GB RAM UFS 4.0 |

75.    The memory is used to store fingerprint information and transaction information. The Accused Instrumentalities store sensitive data such as biometric authentication information and transaction information in a variety of different ways. For example, Samsung's Knox Vault can be used to store biometric authentication information.[41] Fingerprint biometrics may be stored in a Trusted Execution Environment (TEE).[42] Such information is "encrypted and stored in a separate part of the smartphone, completely inaccessible to the regular operating system."[43] A secure element may also be used to store card information.[44]

76.    Samsung's mobile devices include a biometric reading device such as a fingerprint sensor:



---

[40] *Id*.

[41] Samsung Knox Documentation, *supra*.

[42] Samsung Knox, *supra*.

[43] *Id*.

[44] *Samsung eSE SDK*, *supra* (describing the "embedded Secure Element (eSE)" of Samsung devices and how they store "payments."); *How secure is Samsung Pay*, *supra* (describing Samsung Pay's use of tokenization to store credit card (transaction) information).

77.     The Accused Instrumentalities include an authentication module configured to authenticate that the biometric information read by the biometric reading device is associated with the transaction information based at least in part on the biometric authentication information stored in memory. For example, the devices include one or more processors that can authenticate biometric information. For example, the Samsung Galaxy S23 Ultra has a Qualcomm Snapdragon 8 Gen 2 CPU:

| PLATFORM | OS | Android 13, up to 4 major Android upgrades, One UI 6.1.1 |
| --- | --- | --- |
| | Chipset | Qualcomm SM8550-AC Snapdragon 8 Gen 2 (4 nm) |
| | CPU | Octa-core (1x3.36 GHz Cortex-X3 & 2x2.8 GHz Cortex-A715 & 2x2.8 GHz Cortex-A710 & 3x2.0 GHz Cortex-A510) |
| | GPU | Adreno 740 |

78.     The Accused Instrumentalities include a transaction module configured to provide the transaction information via the short-range RF circuitry for use in a transaction when the biometric information read by the biometric reading device is successfully authenticated as being associated with the transaction information by the authentication module. For example, the Accused Instrumentalities follow EMV's standards for processing contactless payments.[45]

---

[45] US Payments Forum, *supra* at 24–25; *see also* EMVCo., *supra* at 42–43.

### 5.1.2   Transaction Processing (POS Contactless, Device-Centric Wallet)

Figure 6 illustrates the processing for in-store EMV contactless transactions using an NFC-enabled mobile phone with a device-centric digital wallet at a POS.



<sup></sup>a In some implementations, the last four digits, instead of the PAN, are passed back in the authorization response
<sup></sup>b Last 4 digits of the PAN may not always be returned to the merchant.

**Figure 6.  Processing a Contactless EMV Transaction Using an NFC-Enabled Device-Centric Digital Wallet**

1. The cardholder taps a contactless-enabled mobile device at a merchant contactless POS device to pay for goods and services.  A transaction authorization is initiated, and a corresponding message is sent to the merchant acquirer/processor containing the payment token from the cardholder's mobile device, along with a unique cryptogram.

2. The merchant acquirer/processor receives the transaction request, uses the token (looks like a PAN) to perform a token BIN lookup, and determines the networks to which the transaction can be routed.  The merchant acquirer/processor routes the transaction to the appropriate payment network (based on the preferred routing choice, least cost, or some other criterion agreed to with the merchant).

3. The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.

4. The TSP verifies the cryptogram and returns the clear PAN[6] to the payment network.

5. The payment network forwards the transaction with the clear PAN to the appropriate issuer processor.

6. The issuer processor forwards the authorization request, with the clear PAN, to the issuer.

7. The issuer completes final authorization and sends an authorization response to the issuer processor.

8. The issuer processor sends the authorization response to the payment network.

9. The payment network sends the authorization response to the merchant acquirer/processor, ensuring that the token, not the clear PAN, is included.

10. The merchant acquirer/processor responds to the contactless terminal to complete the transaction.  Meanwhile, the issuer processor sends a transaction completion notification, with the token, to the TSP, indicating the outcome of the transaction.

11. The TSP pushes a notification to the mobile device on which the token was initially provisioned during the enrollment process.  Whether this step occurs depends on issuer participation.

79.     During a transaction, as illustrated exemplarily above, the user places the cellular phone in proximity to the NFC reader in the POS terminal. As part of the process, the POS terminal sends a signal to the user's cellular phone—"One device (usually the NFC reader) generates an electromagnetic field to establish a connection."[46]

80.     Samsung committed the infringing activities without license from Mobility IP. Samsung's acts of infringement have damaged Mobility IP, as owner of the '807 Patent. Mobility IP is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial. The infringement of the '807 Patent by Samsung has damaged Plaintiff.

### Count V: Infringement of U.S. Patent No. 10,235,513

81.     All preceding factual allegations are incorporated as if fully set forth herein.

82.     The USPTO duly and legally issued U.S. Patent No. 10,235,513 ("'513 Patent") to Mr. Franciso Martinez de Velasco Cortina and Mr. Manfred Rietzler as named inventors. All right, title, and interest in the '513 Patent have been assigned to Mobility IP.

83.     The '513 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

84.     Samsung has directly infringed the '513 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the Accused Instrumentalities to practice the claimed invention in the '513 Patent. For example, Claim 1 of the '513 Patent[47] recites:

A mobile device, comprising:

---

[46] Nelson, *supra*.
[47] Claim 1 is referenced herein for representative purposes. Plaintiff reserves the right to identify additional asserted claims and reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

a biometric input device configured to receive biometric data;

a short range radio frequency circuit;

memory configured to store fingerprint information for identifying an individual associated with transaction information;

a processor coupled with the memory and the biometric input device, the processor configured to:

> receive a signal from a point of sale terminal via the short range radio frequency circuit, the signal comprising a request to access the memory and retrieve the transaction information,

> receive the biometric data from the biometric input device,

> compare the received biometric data with the biometric information stored in the memory, and

> transmit the transaction information to the point of sale terminal using the short range radio frequency circuit when the received biometric data matches the stored biometric information; and

a mobile device body housing the biometric input device, short range radio frequency circuit, memory, and processor.

85.    The Accused Instrumentalities meet the recited elements of Claim 1.

86.    Samsung's Accused Instrumentalities include a fingerprint scanner (which qualifies as a biometric reading device) configured to receive biometric data:



87.    The Accused Instrumentalities include a short-range radio frequency circuit. For example, the Accused Instrumentalities include NFC technology that includes an antenna configured to communicate via NFC, which utilizes radio frequency.



88.     The Accused Instrumentalities include a memory. The memory is configured to store transaction information and fingerprint information. For example, the Accused Instrumentalities include random access memory (RAM) which qualifies as memory.

| MEMORY | Card slot | No |
|---|---|---|
| | Internal | 256GB 8GB RAM, 256GB 12GB RAM, 512GB 12GB RAM, 1TB 12GB RAM UFS 4.0 |

89.     The memory is used to store biometric information and transaction information. The Accused Instrumentalities store sensitive data such as biometric information and transaction information in a variety of different ways. For example, Samsung's Knox Vault can be used to store biometric information.[48] Fingerprint biometrics may be stored in a Trusted Execution Environment (TEE).[49] Such information is "encrypted and stored in a separate part of the smartphone, completely inaccessible to the regular operating system."[50] A secure element may also be used to store card information.[51]

---

[48] Samsung Knox Documentation, *supra*
[49] Samsung Knox, *supra*.
[50] *Id*.
[51] *Samsung eSE SDK*, *supra*; *How secure is Samsung Pay*, *supra*.

90.    The Accused Instrumentalities include a processor. The processor is coupled with the memory and fingerprint scanner. For example, the devices include one or more processors. For example, the Samsung Galaxy S23 Ultra has a Qualcomm Snapdragon 8 Gen 2 CPU:

| PLATFORM | OS | Android 13, up to 4 major Android upgrades, One UI 6.1.1 |
|---|---|---|
| | Chipset | Qualcomm SM8550-AC Snapdragon 8 Gen 2 (4 nm) |
| | CPU | Octa-core (1x3.36 GHz Cortex-X3 & 2x2.8 GHz Cortex-A715 & 2x2.8 GHz Cortex-A710 & 3x2.0 GHz Cortex-A510) |
| | GPU | Adreno 740 |

91.    The processor is configured to receive a signal from a point of sale terminal via the short range radio frequency circuit, the signal comprising a request to access the memory and retrieve the transaction information. The processor is also configured to receive the fingerprint data from the fingerprint scanner and compare the received fingerprint data with the fingerprint information stored in the memory. The processor is further configured to transmit the transaction information to the point of sale terminal using the short range radio frequency circuit when the received fingerprint data matches the stored fingerprint information.

92.    For example, the Accused Instrumentalities follow EMV's standards for processing contactless payments.[52]

---

[52] US Payments Forum, *supra* at 24–25; *see also* EMVCo, *supra* at 42–43.

### 5.1.2  Transaction Processing (POS Contactless, Device-Centric Wallet)

Figure 6 illustrates the processing for in-store EMV contactless transactions using an NFC-enabled mobile phone with a device-centric digital wallet at a POS.



<sup>a</sup> In some implementations, the last four digits, instead of the PAN, are passed back in the authorization response
<sup>b</sup> Last 4 digits of the PAN may not always be returned to the merchant.

**Figure 6.  Processing a Contactless EMV Transaction Using an NFC-Enabled Device-Centric Digital Wallet**

1. The cardholder taps a contactless-enabled mobile device at a merchant contactless POS device to pay for goods and services.  A transaction authorization is initiated, and a corresponding message is sent to the merchant acquirer/processor containing the payment token from the cardholder's mobile device, along with a unique cryptogram.

2. The merchant acquirer/processor receives the transaction request, uses the token (looks like a PAN) to perform a token BIN lookup, and determines the networks to which the transaction can be routed.  The merchant acquirer/processor routes the transaction to the appropriate payment network (based on the preferred routing choice, least cost, or some other criterion agreed to with the merchant).

3. The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.

4. The TSP verifies the cryptogram and returns the clear PAN[6] to the payment network.

5. The payment network forwards the transaction with the clear PAN to the appropriate issuer processor.

6. The issuer processor forwards the authorization request, with the clear PAN, to the issuer.

7. The issuer completes final authorization and sends an authorization response to the issuer processor.

8. The issuer processor sends the authorization response to the payment network.

9. The payment network sends the authorization response to the merchant acquirer/processor, ensuring that the token, not the clear PAN, is included.

10. The merchant acquirer/processor responds to the contactless terminal to complete the transaction.  Meanwhile, the issuer processor sends a transaction completion notification, with the token, to the TSP, indicating the outcome of the transaction.

11. The TSP pushes a notification to the mobile device on which the token was initially provisioned during the enrollment process.  Whether this step occurs depends on issuer participation.

93.     During a transaction, as exemplarily illustrated above, the user places the cellular phone in proximity to the NFC reader in the POS terminal, the cellular phone transmits transaction information, and as part of the process, the POS terminal sends a signal that is received by the user's cellular phone—"One device (usually the NFC reader) generates an electromagnetic field to establish a connection."[53]

94.     In the Accused Instrumentalities, the user authenticates himself/herself using biometric information, such as through the use of a fingerprint sensor.[54]



95.     The Accused Instrumentalities include a mobile device body housing the biometric input device, short range radio frequency circuit, memory, and processor. This can be seen in a teardown of an exemplary Accused Instrumentality, such as the Samsung Galaxy S23 Ultra.[55]

96.     Samsung committed the infringing activities without license from Mobility IP. Samsung's acts of infringement have damaged Mobility IP, as owner of the '513 Patent. Mobility IP is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial. The infringement of the '513 Patent by Samsung has damaged Plaintiff.

**Count VI: Infringement of U.S. Patent No. 10,706,412**

---

[53] Nelson, *supra*.
[54] *Samsung Wallet FAQ, supra*.
[55] PBKreviews, *Samsung Galaxy S23 Ultra Teardown Disassembly Repair Video Review*, (Feb. 8, 2023), https://youtu.be/6KV7rQrSJZQ

97.     All preceding factual allegations are incorporated as if fully set forth herein.

98.     The USPTO duly and legally issued U.S. Patent No. 10,706,412 ("'412 Patent") to Mr. Franciso Martinez de Velasco Cortina and Mr. Manfred Rietzler as named inventors. All right, title, and interest in the '412 Patent have been assigned to Mobility IP.

99.     The '412 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

100.    Samsung has directly infringed the '412 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the Accused Instrumentalities to practice the claimed invention in the '412 Patent. For example, Claim 1 of the '412 Patent[56] recites:

A mobile device, comprising:

short range radio frequency (RF) circuitry;

a memory coupled to the short range RF circuitry and configured to store biometric authentication information and payment information, wherein the biometric authentication information is associated with a user associated with the payment information;

a biometric reading device configured to read biometric information; and

one or more processors operably coupled to the memory, short range RF circuitry, and the biometric reading device, the one or more processors configured to execute instructions stored in the memory that, when executed by the one or more processors, causes the one or more processors to perform operations of:

establishing a connection with a point of sale (POS) device, via the short range RF circuitry, wherein the connection is established to conduct a secure transaction between the mobile device and the POS device,

prompting the user to provide biometric information to the biometric reading device,

---

[56] Claim 1 is referenced herein for representative purposes. Plaintiff reserves the right to identify additional asserted claims and reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

authenticating that the biometric information read by the biometric reading device is associated with the user associated with the payment information based on the biometric authentication information stored in the memory,

in response to the authentication, generating a key,

securing the payment information stored in the memory, and

transmitting to the POS device, via the short range RF circuitry, the key and the secured payment information for use in the secure transaction.

101.    The Accused Instrumentalities meet the recited elements of Claim 1.

102.    The Accused Instrumentalities include a short-range radio frequency circuit. For example, the Accused Instrumentalities include NFC technology that includes an antenna configured to communicate via NFC, which utilizes radio frequency.



103.    The Accused Instrumentalities include a memory. The memory is configured to store transaction information and fingerprint information. For example, the Accused Instrumentalities include random access memory (RAM) which qualifies as memory.

| MEMORY | Card slot | No |
| --- | --- | --- |
| | Internal | 256GB 8GB RAM, 256GB 12GB RAM, 512GB 12GB RAM, 1TB 12GB RAM UFS 4.0 |

104.    The memory is used to store fingerprint information and transaction information. The Accused Instrumentalities store sensitive data such as biometric authentication information and transaction information in a variety of different ways. For example, Samsung's Knox Vault can be used to store biometric authentication information.[57] Fingerprint biometrics may be stored in a Trusted Execution Environment (TEE).[58] Such information is "encrypted and stored in a separate part of the smartphone, completely inaccessible to the regular operating system."[59] A secure element may also be used to store card information.[60]

105.    Samsung's Accused Instrumentalities include a biometric reading device, such as a fingerprint scanner configured to receive fingerprint data:



106.    The Accused Instrumentalities include one or more processors that are coupled with the memory, short-range RF circuitry, and the biometric reading device. For example, the Samsung Galaxy S23 Ultra has a Qualcomm Snapdragon 8 Gen 2 CPU:

| PLATFORM | OS | Android 13, up to 4 major Android upgrades, One UI 6.1.1 |
| --- | --- | --- |
| | Chipset | Qualcomm SM8550-AC Snapdragon 8 Gen 2 (4 nm) |
| | CPU | Octa-core (1x3.36 GHz Cortex-X3 & 2x2.8 GHz Cortex-A715 & 2x2.8 GHz Cortex-A710 & 3x2.0 GHz Cortex-A510) |
| | GPU | Adreno 740 |

---

[57] Samsung Knox Documentation, *supra*.
[58] Samsung Knox, *supra*.
[59] *Id*.
[60] *Samsung eSE SDK*, *supra* (describing the "embedded Secure Element (eSE)" of Samsung devices and how they store "payments."); https://www.samsung.com/uk/support/apps-services/how-secure-is-samsung-pay/ (describing Samsung Pay's use of tokenization to store credit card (transaction) information).

107.    The processor is configured to establish a connection with a point of sale (POS) device, via the short-range RF circuitry to conduct a secure transaction between the mobile device and the POS device. For example, the Accused Instrumentalities follow EMV's standards for processing contactless payments.[61]

### 5.1.2   Transaction Processing (POS Contactless, Device-Centric Wallet)

Figure 6 illustrates the processing for in-store EMV contactless transactions using an NFC-enabled mobile phone with a device-centric digital wallet at a POS.



[a] In some implementations, the last four digits, instead of the PAN, are passed back in the authorization response
[b] Last 4 digits of the PAN may not always be returned to the merchant.

**Figure 6.  Processing a Contactless EMV Transaction Using an NFC-Enabled Device-Centric Digital Wallet**

_____

[61] US Payments Forum, *supra* at 24–25; *see also* EMVCo, *supra* at 42–43.

1. The cardholder taps a contactless-enabled mobile device at a merchant contactless POS device to pay for goods and services. A transaction authorization is initiated, and a corresponding message is sent to the merchant acquirer/processor containing the payment token from the cardholder's mobile device, along with a unique cryptogram.

2. The merchant acquirer/processor receives the transaction request, uses the token (looks like a PAN) to perform a token BIN lookup, and determines the networks to which the transaction can be routed. The merchant acquirer/processor routes the transaction to the appropriate payment network (based on the preferred routing choice, least cost, or some other criterion agreed to with the merchant).

3. The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.

4. The TSP verifies the cryptogram and returns the clear PAN[6] to the payment network.

5. The payment network forwards the transaction with the clear PAN to the appropriate issuer processor.

6. The issuer processor forwards the authorization request, with the clear PAN, to the issuer.

7. The issuer completes final authorization and sends an authorization response to the issuer processor.

8. The issuer processor sends the authorization response to the payment network.

9. The payment network sends the authorization response to the merchant acquirer/processor, ensuring that the token, not the clear PAN, is included.

10. The merchant acquirer/processor responds to the contactless terminal to complete the transaction. Meanwhile, the issuer processor sends a transaction completion notification, with the token, to the TSP, indicating the outcome of the transaction.

11. The TSP pushes a notification to the mobile device on which the token was initially provisioned during the enrollment process. Whether this step occurs depends on issuer participation.

108. During a transaction, as illustrated above for example, the user places the cellular phone in proximity to the NFC reader in the POS terminal, the cellular phone transmits transaction information, and as part of the process, the POS terminal sends a signal that is received by the user's cellular phone—"One device (usually the NFC reader) generates an electromagnetic field to establish a connection."[62]

109. The processor is configured to prompt the user to provide biometric information to the biometric reading device.[63]

[62] Nelson, *supra*.
[63] Samsung UK, *How to set-up Samsung Pay on your Galaxy phone*, (Nov. 18, 2022) https://youtu.be/Aw2zbFUIGls?t=28; MK Loves Tech, *How to Use Samsung Wallet– Add Cards and Pay in Store*, (Jul. 3, 2024), https://youtu.be/ZDNh-gBhLvQ?t=154.





110.    In the Accused Instrumentalities, the user authenticates himself/herself using biometric information, such as through the use of a fingerprint sensor.[64]



---

[64] *Samsung Wallet FAQ, supra.*

111.    In the Accused Instrumentalities, the Accused Instrumentalities generate a key. For example, the EMV standard described above involves the generation of a cryptogram after authentication. A cryptogram (also known as a token cryptogram or a "transaction specific dynamic security code") is a secure code generated during a transaction that verifies the transaction and helps prevent fraud. The payment network validates the cryptogram and de-tokenizes the token to determine the PAN, which is then processed by the payment network. Thus, the cryptogram acts as a key to the transaction.

112.    In the Accused Instrumentalities, the processor is configured to secure the payment information stored in the memory. The Accused Instrumentalities use a secure element to store card information.[65]

113.    In the Accused Instrumentalities, the processor is configured to transmit to the POS device, via the short-range RF circuitry, the key and the secured payment information for use in the secure transaction. For example, as described above, the EMV standard involves transmitting the cryptogram and the secured payment information from the Accused Instrumentality to the POS device.

114.    Samsung committed the infringing activities without license from Mobility IP. Samsung's acts of infringement have damaged Mobility IP, as owner of the '412 Patent. Mobility IP is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial. The infringement of the '412 Patent by Samsung has damaged Plaintiff.

**Count VII: Infringement of U.S. Patent No. 10,762,187**

---

[65] Samsung Developer, *supra* (describing the "embedded Secure Element (eSE)" of Samsung devices and how they store "payments."); *How secure is Samsung Pay*, *supra* (describing Samsung Pay's use of tokenization to store credit card (transaction) information).

115.    All preceding factual allegations are incorporated as if fully set forth herein.

116.    The USPTO duly and legally issued U.S. Patent No. 10,762,187 ("'187 Patent") to Mr. Franciso Martinez de Velasco Cortina and Mr. Manfred Rietzler as named inventors. All right, title, and interest in the '187 Patent have been assigned to Mobility IP.

117.    The '187 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

118.    Samsung has directly infringed the '187 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the Accused Instrumentalities to practice the claimed invention in the '187 Patent. For example, Claim 1 of the '187 Patent[66] recites:

A mobile device, comprising:

short range radio frequency (RF) circuitry;

memory configured to store biometric authentication information and payment information;

a biometric module configured to read biometric information;

an authentication module configured to determine whether the biometric information read by the biometric module corresponds to the biometric authentication information stored in memory; and

a secure module configured to:

generate a key when the biometric information read by the biometric reading device is determined by the authentication module to correspond to the biometric authentication information stored in memory;

encrypt the key and the payment information stored in memory; and

provide, via the short range RF circuitry, the encrypted key and payment information for use in a transaction.

119.    The Accused Instrumentalities meet the recited elements of Claim 1.

---

[66] Claim 1 is referenced herein for representative purposes. Plaintiff reserves the right to identify additional asserted claims and reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's scheduling order.

120.    The Accused Instrumentalities include short-range radio frequency circuitry. For example, the Accused Instrumentalities include NFC technology that includes an antenna configured to communicate via NFC, which utilizes radio frequency.



121.    The Accused Instrumentalities include memory. The memory is configured to store payment information and fingerprint information. For example, the Accused Instrumentalities include random access memory (RAM) which qualifies as memory.

| MEMORY | Card slot | No |
|---|---|---|
| | Internal | 256GB 8GB RAM, 256GB 12GB RAM, 512GB 12GB RAM, 1TB 12GB RAM UFS 4.0 |

122.    The memory is used to store fingerprint information and payment information. The Accused Instrumentalities store sensitive data such as biometric authentication information and transaction information in a variety of different ways. For example, Samsung's Knox Vault can be used to store biometric authentication information.[67] Fingerprint biometrics may be stored in a Trusted Execution Environment (TEE).[68] Such information is "encrypted and stored in a separate

---

[67] Samsung Knox Documentation, *supra*
[68] Samsung Knox, *supra.*

part of the smartphone, completely inaccessible to the regular operating system."[69] A secure element may also be used to store card information.[70]

123.     Samsung's Accused Instrumentalities include a biometric module, such as a fingerprint scanner configured to receive fingerprint data:



124.     The Accused Instrumentalities include an authentication module configured to determine whether the biometric information read by the biometric module corresponds to the biometric authentication information stored in memory. For example, the Accused Instrumentalities are configured to use biometrics to authenticate users.[71]

## How biometrics work

The first step to understanding biometrics is to realize the biometrics are not being saved in the network or passed around between devices and servers. Instead, biometrics are used to lock up and protect other authentication information — usually a digital certificate private key — and it's the "protected" information that is actually being used to authenticate the user.

Android v6 ("Marshmallow") introduced a standardized API for biometrics, focusing on fingerprint readers. Companies looking to leverage biometrics as part of authentication can depend on having a common set of services, a high level of security, and a consistent user experience across platforms.

The key requirement in Android is that fingerprint biometrics have to be stored in the Trusted Execution Environment (TEE). This means the biometric information is encrypted and stored in a separate part of the smartphone, completely inaccessible to the regular operating system. They can't even be exported. Android can ask the TEE to validate an identity using biometrics, but cannot extract the biometric information. This means that when the user stores their biometric information, such as a fingerprint, they are not sharing that information outside of their own smartphone or tablet. They are just establishing a way to identify themselves to their device.

---

[69] *Id.*

[70] *Samsung eSE SDK*, *supra* (describing the "embedded Secure Element (eSE)" of Samsung devices and how they store "payments."); *How secure is Samsung Pay*, *supra* (describing Samsung Pay's use of tokenization to store credit card (transaction) information).

[71] Samsung Knox, *supra.*

125.    The Accused Instrumentalities include one or more processors that can be configured as a secure module. For example, the Samsung Galaxy S23 Ultra has a Qualcomm Snapdragon 8 Gen 2 CPU:

| PLATFORM | OS | Android 13, up to 4 major Android upgrades, One UI 6.1.1 |
|---|---|---|
| | Chipset | Qualcomm SM8550-AC Snapdragon 8 Gen 2 (4 nm) |
| | CPU | Octa-core (1x3.36 GHz Cortex-X3 & 2x2.8 GHz Cortex-A715 & 2x2.8 GHz Cortex-A710 & 3x2.0 GHz Cortex-A510) |
| | GPU | Adreno 740 |

126.    The processor is configured to generate a key when the biometric information read by the biometric reading device is determined by the authentication module to correspond to the biometric authentication information stored in memory. For example, the Accused Instrumentalities follow EMV's standards for processing contactless payments.[72]

### 5.1.2   Transaction Processing (POS Contactless, Device-Centric Wallet)

Figure 6 illustrates the processing for in-store EMV contactless transactions using an NFC-enabled mobile phone with a device-centric digital wallet at a POS.



ᵃ In some implementations, the last four digits, instead of the PAN, are passed back in the authorization response
ᵇ Last 4 digits of the PAN may not always be returned to the merchant

**Figure 6.  Processing a Contactless EMV Transaction Using an NFC-Enabled Device-Centric Digital Wallet**

---

[72] US Payments Forum, *supra* at 24–25; *see also* EMVCo., *supra* at 42–43.

1. The cardholder taps a contactless-enabled mobile device at a merchant contactless POS device to pay for goods and services.  A transaction authorization is initiated, and a corresponding message is sent to the merchant acquirer/processor containing the payment token from the cardholder's mobile device, along with a unique cryptogram.

2. The merchant acquirer/processor receives the transaction request, uses the token (looks like a PAN) to perform a token BIN lookup, and determines the networks to which the transaction can be routed.  The merchant acquirer/processor routes the transaction to the appropriate payment network (based on the preferred routing choice, least cost, or some other criterion agreed to with the merchant).

3. The payment network determines that the transaction is based on a token BIN and issues a request to the appropriate TSP to validate the unique cryptogram and detokenize the token to the PAN.

4. The TSP verifies the cryptogram and returns the clear PAN[6] to the payment network.

5. The payment network forwards the transaction with the clear PAN to the appropriate issuer processor.

6. The issuer processor forwards the authorization request, with the clear PAN, to the issuer.

7. The issuer completes final authorization and sends an authorization response to the issuer processor.

8. The issuer processor sends the authorization response to the payment network.

9. The payment network sends the authorization response to the merchant acquirer/processor, ensuring that the token, not the clear PAN, is included.

10. The merchant acquirer/processor responds to the contactless terminal to complete the transaction.  Meanwhile, the issuer processor sends a transaction completion notification, with the token, to the TSP, indicating the outcome of the transaction.

11. The TSP pushes a notification to the mobile device on which the token was initially provisioned during the enrollment process.  Whether this step occurs depends on issuer participation.

127.    In the Accused Instrumentalities, the user authenticates himself/herself using biometric information, such as through the use of a fingerprint sensor.[73]



128.    In the Accused Instrumentalities, the Accused Instrumentalities generate a key. For example, the EMV standard described above involves the generation of a cryptogram after

---

[73] *Samsung Wallet FAQ, supra.*

authentication. A cryptogram (also known as a token cryptogram or a "transaction specific dynamic security code") is a secure code generated during a transaction that verifies the transaction and helps prevent fraud. The payment network validates the cryptogram and de-tokenizes the token to determine the PAN, which is then processed by the payment network. Thus, the cryptogram acts as a key to the transaction. In the Accused Instrumentalities, the processor is configured to encrypt the key and the payment information stored in the memory. The Accused Instrumentalities use a secure element to store card information.[74] The key and payment information are encrypted via the tokenization process. The key is encrypted in that the information used to create the cryptogram are cryptographically combined to create the cryptogram.

129.    In the Accused Instrumentalities, the processor is configured to provide, via the short range RF circuitry, the encrypted key and payment information for use in a transaction. For example, as described above, the EMV standard involves transmitting the cryptogram and the secured payment information from the Accused Instrumentality to the POS device.

130.    Samsung committed the infringing activities without license from Mobility IP. Samsung's acts of infringement have damaged Mobility IP, as owner of the '187 Patent. Mobility IP is entitled to recover from Samsung the damages it has sustained as a result of Samsung's wrongful acts in an amount subject to proof at trial. The infringement of the '187 Patent by Samsung has damaged Plaintiff.

**JURY DEMAND**

131.    Mobility IP hereby demands a trial by jury on all issues.

---

[74] *Samsung eSE SDK*, *supra* (describing the "embedded Secure Element (eSE)" of Samsung devices and how they store "payments."); *How secure is Samsung Pay*, *supra* (describing Samsung Pay's use of tokenization to store credit card (transaction) information).

## PRAYER

Wherefore, Mobility IP prays for entry of judgment as follows:

132.    A judgment in favor of Mobility IP that Samsung has infringed and is infringing, either literally and/or under the doctrine of equivalents, the Asserted Patents;

133.    A judgment in favor of Mobility IP that Samsung's infringement of the '772 patent has been willful and a judgment in favor of Mobility IP that Samsung's infringement of the '345 patent and the '924 patent is willful and continues to be willful as of the date Samsung received notice of its infringement through this lawsuit;

134.    An award of damages in favor of Mobility IP adequate to compensate Mobility IP for Samsung's infringement of the Asserted Patents which shall in no event be less than a reasonable royalty, together with interest and cost as fixed by the court pursuant to 35 U.S.C. § 284;

135.    An award of enhanced damages in favor of Mobility IP against Samsung for up to three times the award of actual damages for Samsung's willful infringement of the '772 patent, '345 patent, and '924 patent, pursuant to 35 U.S.C. § 284;

136.    A permanent injunction in favor of Mobility IP against Samsung enjoining Samsung, its officers, agents, employees, and others acting in privity, from further infringement of the '345 and '924 Patents;

137.    An award of an ongoing royalty for Samsung's post-judgment infringement in the event a permanent injunction is not granted;

138.    An award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law in an amount deemed just and appropriate by the Court;

139.    An award of costs and expenses as deemed appropriate by the Court; and

Any other legal or equitable relief to which Mobility IP is justly entitled.

Dated: February 27, 2026           Respectfully submitted,

/s/ Jason S. McManis
Jason S. McManis
State Bar No.: 24088032
Weining Bai
State Bar No.: 24101477
Thomas Delrosario
State Bar No.: 24110645
Justin Kenney
State Bar No.: 24126702
Ab Henry
State Bar No.: 24131987
Zach Grinovich
State Bar No.: 24149804
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
jmcmanis@azalaw.com
wbai@azalaw.com
tdelrosario@azalaw.com
jkenney@azalaw.com
ahenry@azalaw.com
zgrinovich@azalaw.com

*Of Counsel:*

Howard Wisnia
**Wisnia PC**
California Bar No. 184626
howard@wisnialaw.com
12636 High Bluff Dr., Suite 400
San Diego CA 92130
Tel: +1 858 461 0989

Andrea L. Fair
State Bar No. 24078488
andrea@millerfairhenry.com
**Miller Fair Henry, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Tel: 903-757-6400
Fax: 903-757-2323

**COUNSEL FOR PLAINTIFF**